KAREN P. HEWITT
United States Attorney
EUGENE S. LITVINOFF
Assistant U.S. Attorney
California State Bar No. 214318
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5790
Facsimile: (619) 235-2757
Eugene.Litvinoff2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07CR2919-IEG |
| Plaintiff, | ) | DATE: December 17, 2007<br>TIME: 2:00 PM |
| v. | ) | |
| RAFAEL LUNA, | ) | GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO: |
| Defendant. | ) | (1) COMPEL DISCOVERY;<br>(2) PRESERVE EVIDENCE; AND<br>(3) GRANT LEAVE TO FILE FURTHER MOTIONS. |
| | ) | TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES, AND GOVERNMENT'S MOTION FORRECIPROCAL DISCOVERY |

/ /

/ /

/ /

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Eugene S. Litvinoff, Assistant United States Attorney, hereby files its Response and Opposition to Defendant's above-referenced motions. This pleading is based upon the files and records of this case.

## I

## STATEMENT OF THE CASE

On October 19, 2007, a federal grand jury in the Southern District of California returned a two-count Indictment charging Defendant in Count One with importation of approximately 38.70 kilograms (85.14 pounds) of methamphetamine, in violation of Title 21, United States Code, Sections 952 and 960, and in Count Two with possession of 38.70 kilograms (85.14 pounds) of methamphetamine with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1). Defendant was arraigned on the Indictment on October 30, 2007.

## II

## STATEMENT OF FACTS

### A. The Offense Conduct

#### 1. Pre-Primary Inspection

On October 16, 2007, at approximately 5:05 p.m., Defendant Rafael Luna ("Defendant") entered the United States from Mexico at the San Ysidro, California, Port of Entry ("POE") as the driver, stated owner, and sole occupant of a 2000 Hyundai Accent bearing no license plates. During pre-primary operations, Officer Castillo made contact with Defendant. Officer Castillo approached Defendant's vehicle because Defendant appeared to be visually tracking Officer Castillo's movements as he walked out to pre-primary. Officer Castillo observed Defendant observed Defendant choke up on the steering wheel of the vehicle and stiffen up as Castillo turned to walk in Defendant's direction.

Officer Castillo approached Defendant and asked Defendant how he was doing. Defendant responded abruptly, stating that he was good. When asked what he was bringing back from Mexico, Defendant responded that he was not bringing anything back except for a large wall crucifix of Jesus Christ that was laying in the back seat of the vehicle. Defendant stated that he owned the vehicle for about a month. Upon request, Defendant provided the vehicle registration and his Resident Alien Card.

Officer Castillo asked Defendant what he was doing in Mexico; Defendant responded that he was visiting a girlfriend. Defendant also stated that he was headed to his home in Pico Rivera, California. As Officer Castillo knocked on the quarter panels of the vehicle, he noticed that Defendant became even more nervous and “jittery”. When asked again if he was bringing anything else back from Mexico, Defendant responded “Nothing, why?”

Officer Castillo began a cursory inspection on the vehicle, in which he had Defendant open the passenger side door. Castillo looked through the hole where the seat belt comes out of the quarter panel and noticed what appeared to be packaged wrapped in brown packaging tape. Castillo immediately handcuffed Defendant and escorted him to the security office for a pat-down. While being escorted, Officer Castillo noticed that Defendant’s hands were shaking and very sweaty.

**2. Narcotics Detector Dog**

After Defendant was taken to the security office, and before the vehicle was moved out of pre-primary inspection, a narcotics detector dog was utilized on the vehicle. The dog alerted to the presence of narcotics by sitting at the driver’s side door. The vehicle was then driven to the secondary lot for further inspection.

**3. Secondary Inspection**

At secondary inspection, Officer Valenteros performed a seven-point inspection on the vehicle. Officer Valenteros discovered cellophane wrapped packages concealed within the quarter panels. A package was randomly retrieved and probed; the crystal substance field-tested positive for the presence of methamphetamine.

Officer Valenteros then had the vehicle x-rayed, which indicated discrepancies wihtin the passenger side quarter panel. Valenteros removed 10 packages from the driver side quarter panel, 10 packages from the passenger side quarter panel, and 9 packages from a non-factory roof compartment. The weight of the 29 packages was approximately 38.70 kilograms (85.14 pounds).

**B. Defendant’s Statements**

At approximately 6:00 p.m., Defendant was informed of his Miranda rights in the Spanish language. Defendant agreed to waive his rights and make a statement.

Defendant denied knowledge of the drugs in the vehicle. He stated that he had owned the

vehicle for one month and that he had not lent the vehicle to anyone else. Defendant stated that he was on his way to buy oil and a filter for his Hyundai at Rancho Auto Parts in San Ysidro, California. He stated that he was going to then head straight back to Tijuana so that his mechanic, Fernando, could get to work on his car.

**C. Defendant's Criminal and Immigration History**

Defendant is a Mexican citizen with a valid Resident Alien Card. In 1991, Defendant was convicted of misdemeanor burglary in Los Angeles and received a 5-day jail sentence. He was also arrested on June 13, 1997 and July 20, 1998 for alien smuggling, and on July 28, 1998 for possession of a counterfeit entry document.

## III

## GOVERNMENT'S RESPONSE AND OPPOSITION

**A. MOTION TO COMPEL DISCOVERY**

The Government intends to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The Government has already made 87 pages of discovery and two DVDs available to the defense. The Government anticipates that most discovery issues can be resolved amicably and informally, and has addressed Defendant's specific requests below.

**(1) The Defendant's Statements**

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The Government has produced all of Defendant's written and videotaped statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The Government has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of any rough notes

at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

**(2) Arrest Reports, Notes and Dispatch Tapes**

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery. The United States is unaware of any dispatch tapes regarding Defendant's apprehension.

**(3) Brady Material**

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611

F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(4) Sentencing Information**

Defendant claims that the United States must disclose any information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure

remains in value."). Accordingly, Defendant's demand for this information is premature.

**(5) Defendant's Prior Record**

The United States has already provided Defendant with a copy of his known criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

**(6) Proposed 404(b) Evidence**

Should the United States seek to introduce any similar act evidence pursuant to Federal Rule of Evidence 404(b), the United States will provide Defendant with notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed.

The United States opposes Defendant's request for TECS border crossing reports. While disclosure would be required if the Government intended to use TECS information as Rule 404(b) evidence, see United States v. Vega, 188 F.3d 1150 (9th Cir. 1999), there is no valid basis for requiring disclosure where the information will not be used as Rule 404(b) evidence. As stated above, the United States will comply with its Rule 404(b) notice and disclosure obligations.

**(7) Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

**(8) Tangible Objects**

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

In response to Defendant's specific request for color copies of all photographs in the Government's possession, the United States will voluntarily provide color copies to Defendant.

**(9) Evidence of Bias or Motive to Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(10) Impeachment Evidence**

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

**(11) Criminal Investigation of Government Witness**

Defendants are not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the Government intends to call in its case-in-chief. When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(12) Evidence Affecting Perception, Recollection, Communication or Veracity**

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling.

/ /

/ /

**(13) Witness Addresses**

The Government has already provided Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). The Government is not aware of any "tips" provided by anonymous or identified persons that resulted in Defendant's arrest.

The Government objects to any request that the Government provide a list of every witness to the crimes charged who will not be called as a Government witness. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). The Government is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendant. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(14) Witnesses Favorable to the Defendant**

As stated earlier, the Government will continue to comply with its obligations under Brady and its progeny. At the present time, the Government is not aware of any witnesses who have made an arguably favorable statements concerning Defendant or who could not identify him or who were unsure of his identity or participation in the crime charged.

**(15) Statements Relevant to the Defense**

To reiterate, the United States will comply with all of its discovery obligations. However, "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the

jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Gardner, 611 F.2d at 774-775 (citation omitted).

**(16) Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the Government is only required to produce all Jencks Act material after the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

**(17) Giglio Information**

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

**(18) Reports of Scientific Tests or Examinations**

Defendant requests written reports of tests pursuant to Federal Rules of Criminal Procedure 16(f). The United States will disclose to Defendant the name, qualifications, and a written summary of testimony of any expert the United States intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705.

**(19) *Henthorn* Material**

The United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(20) Informants and Cooperating Witnesses**

At this time, the Government is not aware of any confidential informants or cooperating witnesses involved in this case. The Government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the Government determines that there is a confidential informant somehow involved in this case, the Government will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection.

**(21) Expert Witnesses**

The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include the expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those opinions.

**(22) Personnel Records of Government Officers Involved in the Arrest**

The United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(23) Training of Relevant Law Enforcement Officers**

The United States objects to Defendant's overreaching request for copies of any and all training manuals utilized by the law enforcement academies that pertain to interrogation techniques, interview techniques, and "suggestive" questioning. Defendant cites no authority whatsoever in support of this request. Defendant does not explain how Brady, Rule 16, or any other rule of disclosure require the United States to produce the requested information. The training manuals can in no sense be labeled impeachment information, exculpatory information, or information fitting into any category of Rule 16. The rules and law of discovery are designed to guarantee Defendant access to relevant impeachment information, exculpatory evidence, expert testimony, and physical evidence, not provide an opportunity for a fishing expedition for information regarding the law enforcement agencies.

**(24) Names and Contact Information for All Agents in the Field at Time of Arrest**

Again, the Government has already provided Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

The Government objects to any request that the Government provide a list of every witness to the crimes charged who will not be called as a Government witness. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). The Government is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendant. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(25) Agreements Between the Government and Witnesses**

The Government has not made or attempted to make any agreements with prospective Government witnesses for any type of compensation for their cooperation or testimony.

**(26) TECS Reports**

The United States opposes Defendant's request for TECS border crossing reports. While disclosure would be required if the Government intended to use TECS information as Rule 404(b) evidence, see United States v. Vega, 188 F.3d 1150 (9th Cir. 1999), there is no valid basis for requiring disclosure where the information will not be used as Rule 404(b) evidence. As stated above, the United States will comply with its Rule 404(b) notice and disclosure obligations.

**(27) Opportunity to Weigh, Count, View and Photograph the Contraband**

As previously stated, the United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

**(28) DEA 7 Form**

The United States has not yet received the DEA 7 Form. Once received, the document will be produced to Defendant.

**(29) Narcotics Detector Dog Information**

The United States opposes Defendant's request for narcotics detector dog information. It is well-established that searched conducted at the border are reasonable "simply by virtue of the fact that they occur at the border." See United States v. Flores-Montano, 541 U.S. 149, 152-53 (2004). Probable cause is not at issue in this matter, and the only cases cited in support of Defendant's discovery request relate to instances where probable cause is at issue.

**(30) Residual Request**

The Government has already complied, and will continue to comply, with Defendant's request for compliance with its discovery obligations. The Government will comply with all of its discovery obligations, but objects to any broad and unspecified residual discovery requests.

**B. MOTION TO PRESERVE EVIDENCE**

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United States has made

the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

**C. MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

The United States opposes Defendants filing further motions unless they are based on new discovery or other information not available to Defendants at the time of this motion hearing.

**IV**

**GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

**A. ALL EVIDENCE FOR DEFENDANT'S CASE-IN-CHIEF**

Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), the United States requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which he intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness. The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

**B. RECIPROCAL JENCKS – STATEMENTS BY DEFENSE WITNESSES**

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendant. The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified. However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are

memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

## IV

## CONCLUSION

For the foregoing reasons, the United States requests that Defendants' Motions be denied, except where unopposed.

DATED: December 4, 2007

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

/S/Eugene S. Litvinoff

EUGENE S. LITVINOFF
Assistant U.S. Attorney
Eugene.Litvinoff2@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. RAFAEL LUNA, Defendant. | Case No. 07CR2919-IEG<br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, EUGENE S. LITVINOFF, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS** and **GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. **Kris J. Kraus, Esq.**

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None.

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 4, 2007.

s/ Eugene S. Litvinoff
EUGENE S. LITVINOFF